UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS F.,[1] ) | |
| ) | No. 22 CV 2574 |
| Plaintiff, ) | |
| ) | |
| v. ) | Magistrate Judge Young B. Kim |
| ) | |
| MICHELLE KING, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | January 28, 2025 |
| Defendant. ) | |

**MEMORANDUM OPINION and ORDER**

Nicholas F. seeks disability insurance benefits ("DIB") asserting that he is disabled by various mental health issues. He brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for benefits. For the following reasons, Nicholas's remand request is granted:

**Procedural History**

Nicholas filed a DIB application in January 2020 claiming a disability onset date of June 1, 2018. (Administrative Record ("A.R.") 218-19.) After his application was denied initially and upon reconsideration at the administrative level, (id. at 93-105, 106-24), he sought and was granted a hearing before an Administrative Law Judge ("ALJ"), (id. at 138-39, 175). Nicholas appeared with his attorney at a July 2021 telephonic hearing at which he and a vocational expert ("VE") testified. (Id. at

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Nicholas's first name and last initial in this opinion to protect his privacy to the extent possible.

45-92.) The ALJ ruled in September 2021 that Nicholas is not disabled. (Id. at 19-39.) The Appeals Council denied Nicholas's request for review, (id. at 1-6), making the ALJ's decision the final decision of the Commissioner, *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Nicholas then filed this action seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 6).

## Analysis

Nicholas argues that the ALJ erred by failing to: (1) consider all his limitations when assessing his residual functional capacity ("RFC"); (2) support the subjective symptom evaluation with substantial evidence; and (3) properly consider the opinion of his treating psychiatrist, Dr. Morris Blount. (See generally R. 12, Pl.'s Mem.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations," *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021), and "provide an explanation . . . 'sufficient to allow [the] reviewing court[] to assess the validity of the agency's ultimate findings

and afford [the claimant] meaningful judicial review,'" *Warnell v. O'Malley,* 97 F.4th 1050, 1054 (7th Cir. 2024). Having considered the arguments and record under this standard, the court finds that remand is warranted.

**A.     Subjective Symptom Assessment**

The court turns first to Nicholas's complaints about the ALJ's subjective symptom assessment because the need for remand turns largely on this issue. An ALJ's symptom evaluation is entitled to great deference and may only be reversed where "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014). But the ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence," *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015), and must consider factors such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors, SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). That said, the court will not disturb an ALJ's subjective symptom evaluation that is logically based on specific findings and evidence in the record. *See Murphy*, 759 F.3d at 815.

Nicholas asserts that the ALJ erred when: (1) concluding that his symptoms were controlled with "rather conservative treatment," (R. 12, Pl.'s Mem. at 10 (citing A.R. 29)); (2) discounting his symptom allegations based on reports that he was "doing well" without acknowledging that this statement may be relative, (id. at 11 (citing A.R. 30)); and (3) describing his medical history, reports of waxing and waning symptoms, and brief periods of employment and educational pursuits to discount his

3

symptom allegations without explaining the supposed inconsistencies, (id. at 11-12 (citing A.R. 33-36)).

The court agrees that the ALJ mischaracterized Nicholas's treatment and finds that this error tainted the overall subjective symptom analysis. Indeed, the ALJ described Nicholas's treatment during the relevant period as "rather conservative" and "consisting largely of medication management and therapy," detailing reports that Nicholas's medication was effective with minimal side effects and stating that his psychiatrist had not recommended anything more. (A.R. 30-34.) And while the ALJ also noted that Nicholas had undergone inpatient psychiatric treatment in September 2018 and December 2019, (id. at 25, 31, 34), the ALJ cherry-picked information about those hospitalizations and failed to note a third hospitalization that took place in Spring 2020.

The ALJ minimized Nicholas's 2018 hospitalization, stating that Nicholas "indicat[ed] that he was not actually experiencing symptoms" and "went to the hospital before the[ir] onset." (Id. at 25 (citing id. at 530).) The ALJ later clarified that Nicholas subsequently denied experiencing suicidal ideations despite reporting the same (and more) when he was admitted. (Id. at 31 (citing id. at 530).) But the ALJ ignored the fact that Nicholas's condition was serious enough to require hospitalization for five days during which time he displayed aggressive behavior, "exhibited continued psychotic and mood symptoms," confusion, and disorientation, and experienced paranoid delusions, hallucinations, and "possible responses to internal stimuli." (Id. at 423, 426.) Further, while Nicholas disclaimed his initial

4

reports of suicidal thoughts, he never withdrew his reports of homicidal ideation—a point the ALJ also overlooked. (Id. at 411.)

Next, when discussing Nicholas's 2019 hospitalization for suicidal thoughts, the ALJ emphasized that Nicholas had been noncompliant with medication, minimally compliant with therapy, and had increased his drinking for the two- to three-weeks beforehand. (Id. at 25, 27, 31, 34.) But the ALJ omitted Nicholas's report that his symptoms had been present for at least a month and were serious enough to require a seven-day hospitalization, and that he had failed a partial hospitalization program two months earlier. (Id. at 559.)

Finally, the ALJ noted treating psychiatrist Dr. Blount's July 2020 report that Nicholas had once again sought emergency psychiatric treatment, but this time was not hospitalized. (Id. at 32 (citing id. at 642).) However, the ALJ ignored the June 2020 treatment notes which indicate that Nicholas had just been hospitalized for suicidal thoughts and depression following a "verbal fight" with his sister, and that since discharge had become "really enraged" with his mother and was having nightmares "almost every night." (Id. at 640.) Notably, there are no corresponding medical records for Nicholas's Spring 2020 hospitalization. But the ALJ's failure to even mention it in assessing Nicholas's subjective symptom statement, coupled with an inaccurate description of 2020 being a year of relative stability, (id. at 34 ("Throughout 2020, the claimant remained under the care of psychiatrist, Dr. Blount . . . without indication of referrals for inpatient treatment, nor more aggressive intervention."), 36 ("Early on in the period, claimant was hospitalized a couple of

5

times; but thereafter his participation in outpatient services of counseling and use of medication have resulted in improvement")), gives the court pause.

Taken together with the short shrift given to Nicholas's other psychiatric hospitalizations, (id. at 25, 27, 31, 34), the court cannot conclude that the ALJ's assessment of Nicholas's treatment and subjective symptoms has the support of substantial evidence. "[R]emand is necessary where an ALJ's credibility determination is based on evidence 'cherry-picked from the record, selected without consideration of the context in which they appear.'" *Kelly v. Colvin*, No. 12 CV 5580, 2014 WL 4388546, at *6 (N.D. Ill. Sept. 3, 2014 (quoting *Bates v. Colvin,* 736 F.3d 1093, 1098-99 (7th Cir. 2013)); *see also Teresa N. v. Kijakazi*, No. 20 CV 320, 2022 WL 19100, at *5 (N.D. Ind. Jan. 3, 2022) ("Several inpatient hospitalizations, monthly mental health treatment by psychiatrists and psychologists, as well as repeated medication changes and increases certainly do not fit the definition of conservative mental health treatment.").

The fact that Nicholas repeatedly sought emergency treatment and endured hospitalizations for his mental health issues in 2018, 2019, and 2020 also calls into question the ALJ's references to Nicholas's mental status examinations as "benign" and reports that he was "doing well" during the same period. (A.R. 29-33.) To be sure, Nicholas does appear to have been "doing well" at times. But the court agrees with Nicholas that "doing well" can be relative, (R. 12, Pl.'s Mem. at 11 (citing *Ritaco v. Colvin*, No. 13 CV 6757, 2015 WL 5050140, at *6 (N.D. Ill. Aug. 25, 2015); *Kinder v. Berryhill*, No. 16 CV 76, 2018 WL 4627226, at *2 (N.D. Ind. Sept. 26, 2018))), and

6

notes that Nicholas was hospitalized a month after telling his psychiatrist he was "doing well," suggesting that his condition was not stable, (A.R. 532 (August 2018 treatment note indicating Nicholas was "doing well overall" and "able to stop himself from acting in an inappropriate/agitated manner"), 410-519 (September 2018 hospitalization records)).

Moreover, although the ALJ noted that Nicholas worked several successive part-time positions in and around the relevant period, participated in a paid internship, and completed a semester of community college, he did not explain how these activities are inconsistent with Nicholas's stated symptoms. (Id. at 34-35); *see also Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (finding that ALJ must explain inconsistencies between activities and allegations). This is particularly problematic given the evidence that Nicholas: (1) "rarely" worked more than five hours per week, (A.R. 60); (2) experienced job stress, panic attacks, vomiting, and absenteeism, difficulty understanding and completing tasks, and interpersonal difficulties with managers, (see, e.g., id. at 538 (February 2018 treatment notes indicating Nicholas vomited, suffered "severe panic attack," and missed four work days because he was "depressed" and under "pressure at work"), 530 (September 2018 treatment note reflecting Nicholas's manager triggered his hospitalization), 526 (December 2018 treatment note indicating Nicholas quit cashier job because of stress, was feeling "much more anxious," and had four episodes of psychogenic vomiting)); (3) quit his internship because it made him ill, (id. at 63-64); and (4) took college

7

courses online with accommodations for his mental health limitations, which required just 30-60 minutes per day, (id. at 69).

Simply put, the ALJ failed to trace a path of reasoning from the record evidence to his conclusions. Without an accurate description of Nicholas's treatment history and more fulsome discussion of his allegations, the ALJ's subjective symptom assessment lacks the weight of substantial evidence.

**B.     Opinion Evidence**

The court next turns to Nicholas's complaint that the ALJ did not find "persuasive" his treating psychiatrist Dr. Blount's July 2021 opinion, because any error in this regard would require a reassessment of the RFC. An ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must assess the persuasiveness of all medical opinions by considering and explaining the most important factors—supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The supportability factor requires consideration of the objective medical evidence and explanations presented and used by the medical source, 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1), while the consistency factor directs the ALJ to consider and explain how the opinion is consistent with all other medical and nonmedical sources, 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ also may, but is not required to, explain how he considered the medical source's specializations and relationship with

8

the claimant and any other factors that tend to support or contradict the source's opinion. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2).

After treating Nicholas for nearly two years, Dr. Blount completed a mental health RFC questionnaire before Nicholas's July 2021 administrative hearing, indicating among other things that Nicholas's bipolar disorder and PTSD cause mood swings, suicidal ideation, nightmares, hypervigilance, anxiety, and panic attacks—resulting in marked impairment in maintaining concentration, persistence, or pace, moderate impairment in maintaining social functioning, and mild impairment in performing activities of daily living—and him to miss work three times per month, making it difficult to remain employed. (A.R. 757-59.) Dr. Blount also concluded that Nicholas's condition met the "paragraph C" criteria, meaning it was listings-level severe. (Id. at 758.)

When deeming Dr. Blount's opinion only "minimally persuasive," the ALJ took issue with Dr. Blount's "paragraph C" conclusions and assessment that Nicholas's conditions would interfere with his employment and cause him to miss work three days a month. (Id. at 36.) More specifically, the ALJ found that the evidence did not support Dr. Blout's opining that Nicholas has "minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life" as required to satisfy the paragraph C criteria. (Id.) In so finding, the ALJ noted that Nicholas: (1) "was able to obtain employment" without evidence that his jobs "regularly ended due to an ongoing mental inability to perform job tasks" or "mental breakdown"; (2) nearly completed a paid internship despite that it was different than

9

expected; and (3) successfully completed a semester of college. (Id.) And the ALJ rejected Dr. Blount's conclusions that Nicholas's mental health conditions would interfere with employment and cause three absences a month, finding them "not well supported for the greater part of the period in issue" because "[e]arly on" Nicholas was hospitalized only "a couple of times" and later "his participation in outpatient services" and "use of medication resulted in improvement," which Dr. Blount himself acknowledged. (Id.)

Dr. Blount's treatment notes reflect that Nicholas was getting at least a partial response to medication. (See, e.g., id. at 646 (September 2020 clinical note indicating "getting a response to increased dosage of topamax"), 761 (January 2021 clinical note indicating "getting a response to meds"), 762 (February 2021 clinical note indicating "getting a response to meds"), 764 (April 2021 clinical note indicating "partial response to meds"), 766 (May 2021 clinical note indicating "some response to meds regarding moods").) But the court disagrees that any medication-induced improvement means Nicholas's symptoms had resolved to the point that they would not interfere with employment or cause absences as Dr. Blount opined. This tension is particularly significant because the VE concluded these factors would preclude work. (Id. at 89-90.) And as noted, both the ALJ and the government ignore that in addition to the two hospitalizations the ALJ referenced, Dr. Blount's treatment notes include a third psychiatric hospitalization in Spring 2020 for suicidal thoughts. (Id. at 640.) Indeed, the government inaccurately states in its response that "after plaintiff underwent his two brief hospitalizations [in 2018 and 2019], he sought and

10

received only outpatient counseling and medication." (R. 17, Govt.'s Mem. at 11.) Dr. Blount's notes also indicate that Nicholas sought emergency care in Summer 2020 for uncontrolled symptoms, (id. at 642), and he continued to experience symptoms and medication adjustments in 2021, (see, e.g., id. at 766 (May 2021 visit notes reflecting "more consistent nightmares," "more stress," and increase in medication), 767 (June 2021 visit notes reflecting Nicholas was "being overly aggressive" and "beginning to have ideations that were not good")).

Further, while some of Nicholas's part-time work ended for reasons other than mental health deficits, the record includes evidence that the minimal hours per week Nicholas spent at his jobs exacerbated his symptoms to the point that he missed work and/or quit. (See, e.g., id. at 538 (February 2018 treatment notes indicating Nicholas vomited, suffered "severe panic attack," and missed four work days because he was "depressed" and under "a lot of pressure at work"), 530 (September 2018 treatment notes indicating Nicholas's manager triggered his hospitalization), 526 (December 2018 treatment notes indicating Nicholas quit cashier job because of stress, was feeling "much more anxious" and had four episodes of psychogenic vomiting).) And as the ALJ notes, Nicholas testified that he ended his internship a week early for the same reason. (See id. at 35 (citing id. at 63-64).)

In sum, the court agrees with Nicholas that the ALJ "downplayed" certain facts and omitted others to find that Dr. Blount's opinion lacked support. (R. 12, Pl.'s Mem. at 12-15.) On remand, the ALJ must trace the path of his reasoning between the record and his conclusions concerning the same. *See Kristy S. v. Kijakazi*, No. 21 CV

6230, 2023 WL 2631616, at *5 (N.D. Ill. March 24, 2023) ("Remand is appropriate when an ALJ discounts a medical opinion by relying on cherry-picked evidence." (citing *Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018))).

**C.     RFC Assessment**

Finally, Nicholas complains about the ALJ's RFC assessment. An RFC measures the tasks a person can perform given his limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). The ALJ must incorporate a claimant's limitations, including those that are not severe, in developing the RFC, and may not simply dismiss a line of evidence that is contrary to the ruling. *See Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020); *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). An ALJ's RFC analysis must "say enough to enable review of whether the ALJ considered the totality of a claimant's limitations," *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022), and provide a "logical bridge" between the evidence and the conclusions, *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021).

Here, the ALJ crafted an RFC that followed the opinions of the state agency psychological consultants, concluding that Nicholas could perform a full range of work at all exertional levels with the following non-exertional limitations: "can understand and remember simple and routine instructions in order to carry out simple and routine tasks with adequate concentration, persistence, or pace; can maintain brief and superficial (i.e. enough to give and get basic information) contact

12

with supervisors, coworkers, and the public." (A.R. 28.) Nicholas complains that this RFC fails to limit the frequency of social interaction, and as such may require him to "*constantly* interact" or "work in tandem" with others, which he cannot do. (R. 12, Pl.'s Mem. at 8 (emphasis in original).) Nicholas continues that in settling on "superficial" contact without more, the ALJ ignored "outbursts and conflict" and "disregarded" that his "interactions were often not appropriate, exacerbated his symptoms, and even resulted in hospitalization." (Id. at 8-9.)

As to Nicholas's complaints about the level of interaction allowed in the RFC, the ALJ noted in his RFC analysis Nicholas's "ongoing reports of conflicts with family members, as well as difficulties with managers at previous jobs," but ultimately concluded that Nicholas "has no apparent issues . . . obtaining employment," "maintains romantic relationships and friendships," and "worked through family conflict," including by "rekindl[ing] a relationship with his father." (A.R. 37.) Nevertheless, the ALJ limited Nicholas to "superficial" contact, which must be "brief." (Id. at 28.) In a typical context neither depth nor brevity have any bearing on quantity. However, here the court is persuaded by decisions finding a correlation between contact that is superficial and contact that is infrequent, and others holding that conflating the two dimensions of interaction typically is not reversible error. *See Reynolds v. Kijakazi*, 25 F.4th 470, 474 (7th Cir. 2022) ("[D]istinction [claimant] draws between 'occasional' and 'superficial' may not matter for purposes of the RFC analysis."); *Michael G. v. Comm'r of Soc. Sec.*, No. 23 CV 767, 2024 WL 3616282, at *5 (W.D.N.Y. July 31, 2024) ("An ALJ in a particular case may rationally conclude

13

that 'brief and superficial' contact and 'occasional' contact are functionally equivalent." (citing *Shaibi v. Berryhill*, 883 F.3d 1102, 1107 (9th Cir. 2017))); *Schmidt v. Kijakazi*, No. 21 CV 319, 2022 WL 17584173, at *3 (E.D. Wis. Dec. 12, 2022) ("In most circumstances, a reasonable person could safely assume that the superficiality of contacts has some reasonable correlation with their frequency, especially in the workplace."). That said, because the ALJ overlooked certain evidence in assessing Nicholas's subjective symptom statements and must re-evaluate Dr. Blount's opinion as discussed above, so too must the ALJ reexamine the RFC as needed.

## Conclusion

For the foregoing reasons, this matter is remanded for further proceedings consistent with this opinion.

                               **ENTER:**

                               _____
                               **Young B. Kim**
                               **United States Magistrate**